ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| CARLOS ALBERTO CRESPO MULLER<br><br>Apelante<br><br>v.<br><br>WEST DEVOLPMENT GROUP LLC; Y OTROS<br><br>Apelado | TA2026AP00356 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br><br>Caso Número: MZ2021CV00775<br><br>Sobre: Ley de Corporaciones |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno

Rivera Marchand, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 16 de junio de 2026.

Comparece ante nos, Carlos Alberto Crespo Muller (señor Crespo Muller o apelante), y solicita que revoquemos la *Sentencia* que el Tribunal de Primera Instancia, Sala Superior de Mayagüez (TPI o foro primario) emitió y notificó, el 5 y 6 de febrero de 2026, respectivamente.[1]

Mediante el referido dictamen, el foro primario declaró con lugar sendas mociones de desestimación promovidas por los apelados al amparo de la Regla 10.2 (5) de las Reglas de Procedimiento Civil 32 LPRA Ap. V. R. 10.2 (5). Así, el TPI desestimó con perjuicio la totalidad del caso de epígrafe e impuso al señor Crespo Muller el pago de $5,000.00 en concepto de honorarios de abogado a favor de cada una de las partes demandadas.

Por los fundamentos que exponemos a continuación, revocamos el dictamen apelado. Para una mejor comprensión de la causa presentada, resulta pertinente destacar ciertos asuntos que

---

[1] Sistema Unificado de Administración y Manejo de Casos, SUMAC-TPI, Entrada núm. 171.

surgen del cuadro fáctico procesal que inciden en el análisis jurídico de rigor aplicable.

**I.**

El señor Crespo Muller instó una *Demanda* contra los siguientes: West Development Group, LLC. (West Development); West Sports & Social Development Corp. (West Sports); Carlos David Acosta Marín (Acosta); Fernando Arroyo (Arroyo); Johnny Cruz Paredes (Cruz); Pedro Diez Macías (Diez); y Ángel Bermúdez Tejero (Bermúdez) (en conjunto, parte apelada).[2] En síntesis, alegó que West Development es una compañía con responsabilidad limitada, creada el 20 de abril de 2018, con el propósito de ejercer la administración del equipo de los Indios de Mayagüez (Indios) del Baloncesto Superior Nacional (BSN).[3] El señor Crespo indicó que, es miembro y/o socio con interés en West Development, como Vicepresidente de Mercadeo y posee un interés de 44.5% en la compañía.[4] Por otro lado, adujo que, excluyéndole, los demandados crearon y operan la compañía West Sports, en el carácter de corporación que administra y opera la franquicia de los Indios, y así solicita y recibe fondos municipales, entre otros. Alegó que, los demandados afectaron el funcionamiento de West Development, desviando pagos de West Development a West Sports y alegaron falsamente liquidar a West Development para quedarse con la franquicia.

De las alegaciones de la *Demanda Enmendada*, destacamos las siguientes:[5]

---

[2] *Íd.*, Entrada núm. 1.

[3] Con número de registro 408258, regida por el *ACUERDO OPERACIONAL COMPAÑÍA DE RESPONSABILIDAD LIMITADA WEST DEVELOPMENT GROUP, LLC*, del 15 de enero de 2019. En West Development, el señor Bermúdez funge como Agente Residente y Secretario; el señor Acosta como Presidente; Ing. Barea como Vicepresidente (no incluido en la demanda); el señor Cruz como Vicepresidente de Finanzas; el señor Arroyo como Vicepresidente de Ventas; y el señor Diez como Director.

[4] Los codemandados, señores Acosta, Arroyo, Cruz y Diez, además, el Ing. Barea (no incluido en la demanda) poseen un 11.1% de interés en West Development.

[5] *Íd.*, Entrada núm. 30. Ello, luego de que West Development presentara moción para solicitar exposición más definida. Véase, *Íd.*, Entrada núm. 16.

15. El Sr. Carlos Acosta; el Ing. Jaime Barea, el CPA Johnny Cruz, el Sr. Fernando Arroyo; el Ing. Pedro Diez y el Sr. Carlos Crespo, acuerdan la compra del equipo de Baloncesto Superior Nacional, Indios de Mayagüez.

16. Para servir a este fin se crea WEST DEVELOPMENT GROUP, LLC.

25. Las partes adquieren la franquicia de los Indios en 2018 y acuerdan que el Apoderado será el Sr. Carlos Acosta.

27. West Development obtiene los Derechos de Uso de los Indios, se encargaría de la Administración y asume los pasivos y activos.

28. El 7 de enero de 2019, se incorpora, en el Registro de Corporaciones del Departamento de Estado, WEST SPORTS & SOCIAL DEVELOPMENT CORP.[6]

34. El Sr. Carlos Acosta, Johnny Cruz Paredes, Fernando Arroyo y Ángel Bermúdez Tejero operan simultáneamente en West Development y West Sports.

35. En mayo de 2019 el Sr. Carlos Acosta gira cheques en nombre de West Development y a favor de West Sports, por las cantidades de $8,000.00, $35,000.00 y $7,500.00, respectivamente.

36. En junio de 2019 el Sr. Carlos Acosta gira cheque en nombre de West Development y a favor de West Sports, por la cantidad de $13,000.00 dólares.

39. West Sports ha recibido $900,000 en fondos gubernamentales procedentes del Municipio de Mayagüez [Municipio], mediante los contratos Núm. 2019-000523, 2020-000337, 2020-000515 y 2021-000204, respectivamente.

40. El 1 de octubre de 2019, se reúne la Junta de West Development para discutir detalles para la temporada de baloncesto que se acerca.

41. Se discute la situación financiera y la necesidad de reducir gastos.

43. El 17 de octubre de 2019 el Sr. Carlos Crespo propone recesar la temporada.

45. En reunión de 8 de noviembre de 2019, el Sr, Carlos Acosta expresa que se opone a recesar porque, entre otras cosas, se recibió $300,000 dólares del Municipio.

53. El 26 de diciembre de 2019, el Sr. Carlos Acosta, Johnny Cruz Paredes, Fernando Arroyo y Fernando Diez, con un porciento de participación en West Development de 11.1% cada uno y 44.4% en total, se reúnen.

55. En dicha reunión deciden liquidar la "sociedad".

56. El Sr. Carlos Crespo no recibe información al respecto de lo discutido en esta reunión.

57. El Sr. Johny Cruz expresa que West Development tiene obligaciones ascendientes a $226,987, activos por valor de $110,000, cuentas por cobrar ascendientes a $47,750; más alega que el Sr. Crespo

---

[6] West Sports es una corporación sin fines de lucro, con número de registro 420623, con el señor Bermúdez como Incorporador y Agente Residente, el señor Acosta como Presidente, y el señor Cruz junto con el señor Arroyo como Vicepresidentes.

debe $12,000 en aportaciones adicionales que le habían solicitado.

58. Estos activos y pasivos provienen del Derecho de Uso y la administración de la franquicia de los Indíos y el acuerdo de asumir ganancias y pérdidas.

59. [E]l 24 de febrero de 2020, el Sr. Carlos Acosta, en representación de West Sports, firma contrato con el Municipio, por la cantidad de $350,000 dólares.

60. En dicho contrato West Sports acredita que BSN le ha conferido la facultad de administrar en el Municipio una franquicia de BSN.

61. El Sr. Carlos Crespo aún no ha recibido ninguna información respecto a West Development.

62. Preocupado por los activos de West Development, teniendo un interés de 44.5% en la misma, la mala administración y la falta de transparencia, el Sr. Carlos Crespo solicita a West Development información del estado de la compañía.

64. El 26 de octubre se envía por escrito y mediante correo certificado [solicitando información de West Development] [...].

66. El 9 de noviembre de 2020, el Sr. Carlos Acosta, en representación de West Sports, firma contrato con el Municipio, por la cantidad de $150,000 dólares.

67. En dicho contrato West Sports nuevamente acredita que BSN le ha conferido la facultad de administrar en el Municipio una franquicia de BSN con el nombre de Indíos.

68. El día 13 de noviembre 2020, West Development nos informa que en el 2020 la entidad ha estado inoperante y nos envían copia del acuerdo operacional que rige la entidad y "Balance Sheets".

69. Además, nos informa que en o antes del lunes 16 de noviembre de 2020, nos harían entrega del resto de la información solicitada.

70. El 17 de noviembre de 2020, ante la falta de cumplimiento, se radica Interdicto, solicitando se Ordene el descubrimiento de la información solicitada.

78. En vista ante el Tribunal de Mayagüez, el 17 de febrero de 2021, West Development acredita que no tienen más récords, libros, documentos o ningún otro tipo de información guardada por ningún otro medio [...]. La información enviada es la única información que existe.

82. El Sr. Carlos Crespo tiene un 44.4% de interés propietario en West Development, lo que significa, [conforme al *Acuerdo Operacional*], un 44.4% de interés propietario en los activos.

83. La Franquicia es un activo de West Development.

87. Los Demandados le deben al Demandante $333,000.00 dólares, por concepto de la plusvalía de la Franquicia.

88. El mal funcionamiento de West Development ha afectado el funcionamiento y la honra de los negocios del Demandante.

89. Los acreedores de West Development han solicitado al Sr. Crespo, en su carácter personal, el pago de deudas incurridas por West Development y West Sports.

90. Dichas deudas se adquirieron en contra de los Artículos del *Acuerdo Operacional* de West Development.

91. La situación con respecto a West Development le ha causado al Sr. Carlos Crespo daños y angustias mentales que se estiman en una cantidad no menor de $250,000.00.

92. Las actuaciones y/o omisiones por parte de los Demandados han sido de mala fe, de manera culposa y/o negligente y son la causa directa de los daños sufridos por el Sr. Crespo.

Basado en lo anterior, el señor Crespo Muller suplicó al TPI que ordenara la restitución de West Development, el pago de $275,000.00 y $333,000.00 por concepto de daños por angustias mentales, y por concepto de incremento en valor de la franquicia de los Indios, respectivamente. Además, procuró una indemnización adicional que no sea superior al monto del daño causado de determinar que el acto y/u omisión constituye delito, se realiza de forma dolosa o con grave menosprecio a la vida, la seguridad y la propiedad ajena.

Surge del expediente que, durante etapas procesales anteriores al recurso antes nos, los apelados procuraron la desestimación de la demanda y la demanda enmendada al amparo de las Reglas 10.2 y 10.3 de las Reglas de Procedimiento Civil, *supra*, así como por la Regla 39.2 (b), respectivamente. Sin embargo, luego de evaluar las distintas mociones dispositivas, así como las múltiples oposiciones interpuestas por el apelante, el foro primario las denegó según presentadas. Ello, por entender que, dando por ciertas y buenas todas las alegaciones fácticas de la demanda enmendada, la misma cumple con el estándar de plausibilidad. Además, en torno a lo expuesto al amparo de la Regla 39.2 (b), declaró no ha lugar el petitorio dispositivo por concluir que la causa no se encontraba inactiva y justificaba la concesión de un remedio, entre otros asuntos.[7]

---

[7] Véase Entradas núm. 15 y 23: los codemandados, señores Acosta, Arroyo, Cruz, Diez y Bermúdez, presentaron *Moción en Solicitud de Desestimación* al amparo de la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2; Entradas 49 y 53:

Así, el 29 y 30 de noviembre de 2021, West Development, y los codemandados señores Acosta, Cruz, Arroyo, Diez, y Bermúdez, presentaron *Contestación a Demanda Enmendada.*[8] Entre sus alegaciones y defensas, West Development consignó lo siguiente: falta de parte indispensable; que las gestiones realizadas fueron de buena fe y para promover el interés de la compañía; que el demandante conocía de su liquidación, y renunció libre y voluntariamente a cualquier interés sobre la compañía, por lo que carece de derecho para reclamar sobre los asuntos internos o en sus activos o pasivos; que al haber renunciado, carece de legitimación activa para demandar ya que no posee participación alguna en la compañía; que el demandante no tiene derecho alguno a remuneración por plusvalía de un bien del cual no es dueño y sobre la solicitud del demandante a restitución de West Development, alegó que la compañía no había sido disuelta.

Por su parte, West Sports presentó *Contestación a Demanda.*[9] Entre otras alegaciones, planteó que hizo gestiones en favor de obtener recursos y auspicios como parte de su obligación de operar la franquicia Indios. Confirmó que, en el 2020 West Sports contrató una serie de servicios con el Municipio y constató los números de contratos sostenidos por parte de West Sports con el Municipio. Como parte de sus defensas, consignó su postura sobre la presunta falta de parte indispensable, falta de legitimación activa, ausencia de jurisdicción por prescripción, así como la doctrina de manos limpias y actos propios.

---

el 23 de enero de 2023, West Development presentó *Moción de Desestimación* al amparo de la Regla 39.2 (b) de Procedimiento Civil, 32 LPRA Ap. V, R. 39.2(b); Entradas 60,62,77: el 25 de septiembre de 2023, West Development presentó moción solicitando desestimación, en virtud de la Reglas 6.1 y 10.2(5) de Procedimiento Civil, *supra.* West Sports presentó solicitud de desestimación en cuanto a las entidades jurídicas demandadas, al amparo de la Regla 10.2 de Procedimiento Civil, *supra*; Entradas 91 y 92: West Sports presentó una solicitud de desestimación según la Regla 10.3 de Procedimiento Civil, *supra.*

[8] *Íd.*, Entradas núm. 33 y 34.

[9] *Íd.*, Entrada núm. 78.

Tras varias ocurrencias procesales, que resultan innecesarios pormenorizar, los señores Acosta, Arroyo, Cruz, Diez y Bermúdez, y West Development, presentaron una *Moción de Sentencia Sumaria.*[10] Se planteó que, el demandante no posee prueba para lograr que se imponga responsabilidad personal a los miembros de West Development. Esto porque, según se alegó, únicamente pueden incurrir en responsabilidad civil frente a otro miembro si su proceder fue motivado por un acto de mala fe e intención clara de defraudar al resto de los miembros, entre otros argumentos, en aras de lograr la desestimación de la acción civil instada en su contra.

Por su parte, el 17 de junio de 2024, West Sports presentó una *Solicitud de Sentencia Sumaria* en la que fundamentó que el demandante no tiene pieza de evidencia en su contra que esté relacionada con las alegaciones y los remedios solicitados.[11] Junto a su petitorio sumario incluyó como anejo el certificado de incorporación. Además, señaló como asuntos en controversia: si el demandante tiene legitimación activa en contra de West Sports; titularidad del demandante en la franquicia; restitución de West Development; existencia de un nexo causal y valoración de alegados daños; falta de parte indispensable; prescripción; y temeridad.

Luego de evaluar lo antes, así como la oposición del señor Crespo, el 7 de agosto de 2024, el TPI emitió una *Resolución* en la que declaró no ha lugar a las mociones de sentencia sumaria presentadas por los demandados.[12] En su dictamen interlocutorio, el TPI consignó cuatro hechos:

---

[10] *Íd.*, Entradas núm. 97 y 98. En la moción, se presentaron como Anejos los siguientes: Declaración Jurada del señor Bermúdez; y (5) Exhibts. Por otra parte, en la moción presentada por West Development, se presentaron como Anejos: Declaración Jurada; Primer Pliego Interrogatorio; 2019 Annual Due WDG; 2019 Balance Sheet WS&SDC; (2) Pagare de Caja; Certificado de Organización WDG; Copia de Cheques a WDG, LLC (compra de acciones); Moción Informativa; Minuta; Art. 1- Formación de la Compañía; (3) correo electrónico; Convenio; Explicación a la no Radicación de Planillas WDG; Certificado Registro de Comerciante WDG; Employer Identification Number WDG; Minutas de reuniones; Estado de Cuenta Banco Popular WDG; Segundo Interrogatorio; Contestaciones segundo interrogatorio; Requerimiento de Admisiones; Certificación Oficial BSN.

[11] *Íd.,* Entrada núm. 104. Se acompañó como Anejo, Certificado de Incorporación.

[12] *Íd.,* Entrada núm. 115. Notificada el 8 de agosto de 2024.

1. West Development Group, LLC es una compañía de responsabilidad limitada, creada al amparo de las leyes del Estado Libre Asociado de Puerto Rico. La misma fue creada formalmente en el Departamento de Estado el 20 de abril de 2018. Su número de registro es 408258.

2. El propósito registrado, en el Departamento de Estado, de West Development Group LLC, es: "for the development of the west area Puerto Rico, including, but without being limited to, sports, education, assets holding, investments, administration of public or private properties and another lawful activity that from time to time the board may choose".

3. Los miembros de West Development Group, LLC., el Sr. Carlos Acosta, el Ing. Jaime Barea, el CPA Johnny Cruz, el Sr. Fernando Arroyo, el Ing. Pedro Diez y el Sr. Carlos Crespo, suscribieron un Contrato de Operación de Compañía de Responsabilidad Limitada el cual rige los derechos, las obligaciones y responsabilidades de sus miembros.

4. En el Artículo 4.7 del Contrato Operacional queda instituido que: "Cualquier omisión o falla de cualesquiera de los Miembros, cuyo efecto puede causar o resultar en pérdida o daño a la Compañía o a los Miembros, si es realizado de buena fe para promover el interés superior de la Compañía, dicho Miembro no será responsable unilateralmente de dicha omisión, y no tendrá responsabilidad ante el remanente de los Miembros de dicha omisión".

Surge del referido pronunciamiento judicial, emitido al amparo de la Regla 36 de las Reglas de Procedimiento Civil, *supra*, que, en el caso de epígrafe existe controversias sobre hechos materiales. A su vez, el foro primario dispuso que **debía abstenerse de resolver mediante sentencia sumaria controversias que incluyen elementos subjetivos de intención, propósitos mentales o negligencia, "y cuando el factor credibilidad sea esencial para dirimir los conflictos de la prueba".** (Énfasis Nuestro). La referida resolución no fue cuestionada ante este foro apelativo por ninguna de las partes tornándose así, como la ley del caso desde esa etapa procesal, por lo que el TPI procedió con los señalamientos, en atención a la conferencia con antelación al juicio según instruyen las Reglas 37.4 y 37.5 de las Reglas de Procedimiento Civil, *supra*.

Como parte del proceso ordinario del litigio, el foro primario celebró varias audiencias en aras de promover el buen manejo del caso. A esos efectos, observamos que, en una vista celebrada el 5 de mayo de 2025 ordenó a las partes a reunirse para confeccionar el

informe de conferencia con antelación al juicio ya que por alguna razón no reflejada en la *Minuta-Orden* correspondiente a dicha vista, se discutió un informe de conferencia con antelación al juicio presentado el 25 de abril de 2025, pero el TPI no lo aceptó. Sin embargo, se desprende de la referida *Minuta-Orden,* (la cual fue firmada por la juez y notificada en autos), que se eliminaba la alegación sobre plusvalía de la causa de acción. De igual forma, el TPI consignó lo siguiente:

> Las controversias pendientes que el Tribunal tiene claro es que si el señor Acosta como apoderado incurrió en algún tipo de negocio o transacción con esta corporación en primera instancia. Primero si tenía potestad para hacerlo en la fecha en que se hizo o que se alegó que se hizo porque ya hubiese tenido algún derecho propietario según creado por el Reglamento. Determinar si estos negocios o conversaciones que va a presentar el licenciado Cordero, **si configuran de alguna forma la posibilidad de la creación de un contrato o si se configura un contrato con el documento que vaya a presentar el licenciado Cordero**.[13] (Énfasis nuestro).

Lo antes, tampoco fue objeto de cuestionamiento alguno ante los foros apelativos y así continuó el litigio, pendiente la presentación de la prueba en una etapa procesal posterior.

Así las cosas, el 26 de septiembre de 2025, las partes presentaron el *Informe sobre Conferencia Preliminar Entre Abogados* (Informe CAJ).[14] En el Informe CAJ, el apelante expresó lo siguiente en el acápite K: Se desiste sin perjuicio de las alegaciones con respecto a angustias mentales. De igual forma surge en el acápite M, las solicitudes de enmiendas a la demanda promovidas por el apelante y los fundamentos por los cuales no se presentaron con anterioridad. De otra parte, West Development hizo constar entre sus objeciones, lo expresado en la vista del 5 de mayo de 2025 sobre

---

[13] *Íd.*, Entrada núm. 96.

[14] *Íd.*, Entrada núm. 149. Cabe señalar que las partes estipularon la autenticidad de documentos anejados al Informe CAJ **pero claramente se reservaron el derecho de aportar prueba adicional para aclarar, refutar y corregir información así como para contradecir y confrontar la interpretación validez o significado que la otra parte pretenda probar con los referidos documentos**; al Informe CAJ se anejaron los siguientes: 1) certificado de organización de West Development; 2) acuerdo operacional de West Development; 3) minuta de reuniones de West Development; 4) balance sheet- noviembre 2019; 5) correo electrónico enviado por el señor Cruz; 6) cheques compra de acciones de los Indíos; 7) cheque #2001; 8) estados de cuenta de West Development; 9) explicación a la no radicación de planillas.

la plusvalía y el desistimiento del demandante, así como su apreciación sobre las solicitudes de enmiendas a la demanda.[15] Según se desprende de la *Minuta* de la conferencia con antelación al juicio celebrada el 7 de octubre de 2025 (la cual fue firmada y notificada en autos por el TPI), el representante legal del señor Crespo Muller, reiteró lo expuesto en el Informe CAJ sobre su desistimiento de ciertas alegaciones de la demanda.[16]

Asimismo, surge de la referida *Minuta* que, tras considerar las expresiones de las partes sobre sus respectivas teorías y cuestionamientos sobre la evidencia documental y testifical anunciada, el TPI indicó lo siguiente:

> La Magistrado que preside la sala establece que lo único que el tribunal resolverá en el caso es si en efecto se llevó a cabo el negocio jurídico con los requerimientos de un contrato.

Al concluir, el TPI impartió su aprobación al Informe de Conferencia con Antelación al Juicio, concedió un término para que las partes demandadas presentaran mociones dispositivas y dejó señalado el juicio en su fondo a celebrarse el 10 de marzo de 2026.

En cumplimiento con lo anterior, los apelados volvieron a presentar solicitudes de desestimación al amparo de la Regla 10.2 de Procedimiento Civil, *supra*. Ninguna de las mociones fue acompañada por anejos y con el fin de sustentar sus planteamientos, los apelados discutieron la prueba identificada por el apelante en el Informe CAJ.

Por su parte, West Development y West Sports presentaron sus respectivos petitorios al amparo de la Regla 10.2 de Procedimiento Civil, *supra*.[17] En esencia se argumentó que, el único reclamo del cual no desistió el señor Crespo es que la franquicia de los Indios pertenece a West Development, para lo cual no existe prueba documental anunciada que pueda convencer al Tribunal que

---

[15] *Íd.*, Entrada núm. 149, pág. 49
[16] *Íd.*, Entrada núm. 153.
[17] *Íd.*, Entradas núm. 154 y 156, respectivamente.

existió tal cesión o transferencia. En particular, West Development destacó que, a pesar del tiempo transcurrido, el apelante no ha logrado establecer una reclamación que justifique la concesión de un remedio. A su entender, el señor Crespo Muller desistió de sus reclamaciones, no tomó deposiciones, por lo que la prueba resulta insuficiente. Además, sostuvo que, no se planteó propiamente una solicitud de sentencia declaratoria para establecer la transferencia de la franquicia de Carlos Acosta a dicha corporación. Por su parte, West Sport reiteró su petición de desestimación al amparo de la Regla 10.2, *supra*, ante la presunta falta de legitimación activa del apelante y el hecho que éste había desistido de sus alegaciones.

Asimismo, los codemandados señores Acosta, Arroyo, Cruz, Diez y Bermúdez, presentaron solicitud de desestimación por total ausencia de causa de acción y de prueba conforme la Regla 10.3 de Procedimiento Civil, *supra*.[18]  En particular, señalaron que, la controversia que resta por dilucidar es sobre si la franquicia fue traspasada a West Development. A su entender, lo antes no se relaciona con los individuos que son miembros de la compañía de responsabilidad limitada. Así pues, las partes codemandadas solicitaron imposición de honorarios de abogado por temeridad.

En reacción, el señor Crespo argumentó que las mociones de desestimación, al amparo de la Regla 10.2, de Procedimiento Civil *supra,* no derrotaron la suficiencia de las alegaciones de la demanda enmendada, sino que los apelados pretendían que el Tribunal adjudicase controversias sustantivas de hechos, evaluara prueba documental, adjudicara credibilidad, y emitiera conclusiones jurídicas finales basada en la valorización de la prueba por la vía procesal equivocada.[19] Fundamentó que, el foro primario estaba obligado aplicar la normativa aplicable a las mociones al amparo de

---

[18] *Íd.*, Entrada núm. 155.
[19] *Íd.*, Entradas núm. 166 y 167.

la Regla 10.2, *supra,* y determinar únicamente la suficiencia de sus alegaciones sin pasar juicio, ni valorar prueba alguna. A lo antes añadió que, el récord demuestra la existencia de una relación contractual y corporativa entre West Development y la franquicia de los Indios, relación que no depende exclusivamente de un documento formal de cesión o transferencia de titularidad. Sostuvo que, lo antes surge de actos concluyentes, el consentimiento manifestado por ejecución, las aportaciones de capital, la administración operativa y el cumplimiento de obligaciones reglamentarias ante el BSN.

En fin, expuso que, al existir controversia real sobre la existencia, alcance y consecuencias jurídicas de la relación entre West Development y la franquicia, era improcedente la desestimación de su causa en esta etapa considerando que, el TPI había rechazado mociones similares anteriores, así como mociones de sentencia sumaria ante las controversias medulares existentes que ameritaban una evaluación evidenciaria sobre intención y credibilidad. Explicó que, no ha renunciado su derecho de presentar la prueba para sustentar sus alegaciones y así lo expuso en el Informe CAJ. Particularizó que, los demandados no pueden solicitar desestimación de alegaciones sobre angustias mentales y la plusvalía que ya habían sido desistidas desde antes de celebrar la conferencia con antelación al juicio. A su alocución añadió que, tanto West Sport y Carlos Acosta, son partes indispensables en este caso. Ello, por entender que, resulta indispensable su inclusión para adjudicar la controversia -avalada por el TPI- sobre la transferencia de fondos públicos a favor de West Sport donde Acosta alega ser el único tenedor de los derechos de uso sobre la franquicia y si hubo una transferencia o cesión funcional del derecho de uso de la franquicia a West Development.

Destacó que, los apelados se equivocan al entender que su desistimiento sin perjuicio sobre las alegaciones de angustias mentales y plusvalía equivale a una admisión de inexistencia de relación jurídica o falta de prueba. Reiteró que, luego de la reunión del 26 de diciembre de 2019 para disolver a West Development, se vio en la obligación de acudir al Tribunal de Primera Instancia en un recurso extraordinario para que se revelara la información a la cual tenía derecho como socio con interés mayoritario, luego de que los demás se lo negaran. Suplicó al foro primario declarar no ha lugar las mociones dispositivas instadas al amparo de la Regla 10.2, *supra.*

Evaluado lo anterior, el 5 de febrero de 2026, el foro primario emitió la *Sentencia* apelada en la que desestimó la totalidad de la demanda con perjuicio.[20] En su pronunciamiento, el TPI específicamente indicó que basó su análisis al amparo de la Regla 10.2 *supra,* así como "la prueba anunciada en el informe preliminar entre abogados." De esta forma procedió a evaluar la suficiencia de la prueba identificada en el Informe CAJ y, en particular, impartió valor probatorio y credibilidad a los documentos identificados y a los resúmenes de los testimonios anunciados. En el derecho consignado plasmó la Regla 1 y 10.2 de las Reglas de Procedimiento Civil, *supra,* y la jurisprudencia aplicable a ello, para sustentar 28 hechos, que, a su juicio, resultaban incontrovertidos según su apreciación de la prueba anunciada en el Informe CAJ.

En la referida sentencia, el foro primario indicó que, el señor Crespo desistió de varias de las alegaciones originalmente formuladas, sin identificar a cuáles específicamente se referiría. Resaltó que, como se identificó la cesión del contrato como la única controversia pendiente, ello a su vez, implicaba que no subsistía ninguna causa de acción expuesta en la demanda enmendada.

---

[20] *Íd.,* Entrada núm. 171. Notificada el 6 de febrero de 2026.

Asimismo, sin atender argumentos sobre partes indispensables, el TPI determinó que el demandante no tenía legitimación activa contra West Sports.

Así pues, el TPI estableció que la controversia se circunscribió a determinar si el codemandado, señor Acosta, había transferido a West Development, la titularidad de los derechos de uso relacionados con los Indios. Basado en su valorización de la prueba anunciada en el Informe CAJ, así como su interpretación de la Regla 10.2, *supra,* concluyó que, el demandante, señor Crespo Muller, no tiene causa de acción que justifique un remedio. Por otro lado, el TPI determinó que, el señor Crespo incurrió en temeridad al instar un pleito frívolo contra la parte apelada e impuso el pago de $5,000.00 por concepto de honorarios de abogado.

Inconforme, el 23 de febrero de 2026, el señor Crespo presentó una *Moción de Reconsideración.*[21] Adujo que, en el trámite del caso, ya el Tribunal había reconocido que las alegaciones eran suficientes y ante las controversias medulares sobre intención y credibilidad, el caso merecía seguir su curso en un juicio plenario. Imploró que reconsiderara la desestimación, ya que incorrectamente desplazó el análisis propio de la Regla 10.2, *supra,* al no seguir el estándar liberal a favor del demandante y en cambio a destiempo descartó evidencia anunciada en el Informe CAJ, le imputó credibilidad y valorización a la misma, sin permitir su presentación dentro de un debido proceso de ley.

A modo de ejemplo resaltó que, el TPI consignó que faltaban firmas en documentos sin permitir que se presentaran conforme las reglas evidenciarias en el juicio ya señalado. Arguyó que, la *Sentencia* es materialmente incongruente con el historial procesal ya que, con anterioridad, se había determinado sobre la suficiencia de las alegaciones y mediante el análisis de los petitorios sumarios

---

[21] *Íd.,* Entrada núm. 172.

adjudicados al amparo de la Regla 36, *supra,* se había ordenado la continuación de los procesos en un juicio en su fondo. En la alternativa, destacó la Regla 301 de las Reglas de Evidencia sobre presunciones, el derecho contractual y la prueba anunciada como suficiente para derrotar, en esta etapa de los procesos, la desestimación de la totalidad de su causa de acción. Añadió que, el récord contiene evidencia que muestra una relación real con la franquicia y el derecho de uso. Discutió el alcance de su desistimiento sin perjuicio sobre las alegaciones sobre angustias mentales y la plusvalía, los cuales, en su momento, fueron aceptados por el TPI, sin especial imposición de honorarios, por lo que el imponerle temeridad resultaba desproporcionado y contradictorio con el tracto procesal y las propias determinaciones interlocutorias del foro judicial.

Tras no prosperar en su intento de que el foro primario reconsiderara el dictamen apelado,[22] inconforme aun, el señor Crespo Muller acude ante esta Curia y señala la comisión de los siguientes errores, a saber:

> PRIMER ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DESESTIMAR CON PERJUICIO LA DEMANDA MEDIANTE UN ANÁLISIS QUE, EN LA PRÁCTICA, RESOLVIÓ CONTROVERSIAS DE MÉRITO Y DE SUFICIENCIA PROBATORIA IMPROPIAS DE UNA MOCIÓN DE DESESTIMACIÓN BAJO LAS REGLAS 10.2 Y 10.3, EN LUGAR DE EXAMINAR LAS ALEGACIONES LIBERALMENTE A FAVOR DE LA PARTE DEMANDANTE O PERMITIR LA VENTILACIÓN DE LA PRUEBA EN JUICIO.

> SEGUNDO ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL CONCLUIR QUE NO EXISTÍA CONTROVERSIA REAL Y SUSTANCIAL SOBRE LA TEORÍA DEL DEMANDANTE RESPECTO A QUE WDG OSTENTABA, O DEBÍA OSTENTAR, EL DERECHO DE USO RELACIONADO CON LA FRANQUICIA DE LOS INDIOS DE MAYAGÜEZ, PESE A LA EXISTENCIA EN EL RÉCORD DE EVIDENCIA DOCUMENTAL CONTEMPORÁNEA Y DE INFERENCIAS RAZONABLES QUE, COMO MÍNIMO, REQUERÍAN UNA ADJUDICACIÓN EN LOS MÉRITOS.

> TERCER ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL REDUCIR INDEBIDAMENTE LA CONTROVERSIA A LA EXISTENCIA DE UN "CONTRATO DE CESIÓN" FORMAL SUSCRITO POR CARLOS ACOSTA, DESCARTANDO COMO INSUFICIENTE —EN ETAPA

---

[22] *Íd.,* Entrada núm. 173.

DISPOSITIVA— PRUEBA DOCUMENTAL, CORPORATIVA Y CIRCUNSTANCIAL QUE SOSTENÍA LA TEORÍA DEL DEMANDANTE SOBRE LA ESTRUCTURACIÓN, OPERACIÓN Y TRATAMIENTO ECONÓMICO DEL DERECHO DE USO DENTRO DE WDG.

CUARTO ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL IMPONER HONORARIOS POR TEMERIDAD, CUANDO EL HISTORIAL PROCESAL DEL CASO DEMUESTRA QUE LA RECLAMACIÓN DEL DEMANDANTE SOBREVIVIÓ MÚLTIPLES MOCIONES DISPOSITIVAS, DESCANSABA SOBRE PRUEBA DOCUMENTAL CONCRETA Y PLANTEABA CONTROVERSIAS REALES SOBRE LA ESTRUCTURA Y OPERACIÓN DEL NEGOCIO LITIGIOSO.

QUINTO ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR "NO HA LUGAR" UNA MOCIÓN DE RECONSIDERACIÓN OPORTUNA, DIRIGIDA AL DICTAMEN CORRECTO, FUNDAMENTADA EN DERECHO, ANCLADA EN HECHOS ESPECÍFICOS DEL RÉCORD Y ORIENTADA A CORREGIR ERRORES MATERIALES DEL FALLO.

Por su parte, la parte apelada compareció, de forma conjunta, mediante *Oposición a Apelación Civil*,[23] por lo que, con el beneficio de las posturas de las partes, procedemos a resolver.

## II.

### A. Regla 10.2 de Procedimiento Civil

La Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, viabiliza que un demandado solicite la desestimación de la causa de acción en su contra, antes de contestarla, si de las alegaciones de la demanda surge claramente que alguna de las defensas afirmativas prosperará. *MCG Therapy Group, LLC v. Maestre Rivera y otros*, 2026 TSPR 56, resuelto el 28 de mayo de 2026; *Saint Mary Investments, LLC v. Denton Morales*, 2026 TSPR 35, resuelto el 9 de abril de 2026; *Eagle Security Police, Inc. v. Dorado*, 211 DPR 70, 83 (2023). Particularmente, la Regla 10.2, *supra*, enumera las siguientes defensas: 1) falta de jurisdicción sobre la materia; 2) falta de jurisdicción sobre la persona; 3) insuficiencia del emplazamiento; 4) insuficiencia del diligenciamiento del emplazamiento; 5) dejar de exponer una reclamación que justifique la concesión de un remedio;

---

[23] SUMAC TA, Entrada Núm. 3.

y 6) dejar de acumular una parte indispensable. Regla 10.2 de Procedimiento Civil, *supra*.

Ante una solicitud de desestimación bajo el inciso (5) de la citada Regla 10.2 de Procedimiento Civil, el tribunal ha de tomar como ciertos todos los hechos claros y concluyentes, bien alegados en la demanda. *Casillas Carrasquillo v. ELA*, 209 DPR 240, 247 (2022). Asimismo, el tribunal deberá evaluar si la demanda es suficiente para constituir una reclamación válida, luego de interpretar las alegaciones, conjunta y liberalmente, de la forma más favorable a la parte demandante, y resolviendo toda duda a su favor. *Íd.*

Cabe destacar que, la desestimación de una demanda no procede, menos que se desprenda con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de hechos que pueda ser probado en apoyo a su reclamación. *Eagle Security Police, Inc. v. Dorado, supra.* En ese sentido, el Tribunal Supremo ha establecido que, una solicitud de desestimación al amparo de la Regla 10.2 de Procedimiento Civil, supra, va dirigida a los méritos de la controversia, no a aspectos procesales del caso. *Íd.*

## B. Regla 10.3 de Procedimiento Civil

Como es sabido, la Regla 10.3 de las de Procedimiento Civil, 32 LPRA Ap. V, R.10.3, regula el proceso con relación a la moción de desestimación para que se dicte sentencia por las alegaciones. A esos efectos, la Regla 10.3, *supra*, dispone lo siguiente:

> Después que se hayan presentado todas las alegaciones, cualquier parte podrá solicitar al tribunal que dicte sentencia parcial o total por las alegaciones, sujeto a las disposiciones de la Regla 42.3. Si en una moción en la que se solicite sentencia por las alegaciones se exponen materias no contenidas en dichas alegaciones y éstas no son excluidas por el tribunal, la moción deberá considerarse como una solicitud de sentencia sumaria y estará sujeta hasta su resolución final a todos los trámites ulteriores dispuestos en la Regla 36, y todas las partes tendrán una oportunidad razonable de presentar todo asunto pertinente a dicha moción conforme a lo provisto en la citada regla.

El Tribunal Supremo de Puerto Rico ha establecido que, esta moción dispositiva procede cuando "no existe controversia sustancial de hechos, haciendo innecesario la celebración de un juicio en su fondo para recibir o dilucidar la prueba". *Montañez v. Hosp. Metropolitano*, 157 DPR 96, 102 (2002). Cónsono con lo anterior, cuando la parte demandada solicita que se dicte sentencia por las alegaciones, se consideran admitidos todos los hechos bien alegados en la demanda, junto con las inferencias que puedan hacerse de las mismas. *Íd.*, pág. 103; *Rivera v. Otero de Jové*, 99 DPR 189, 195 (1970). Sin embargo, dichas admisiones sólo se dan por ciertas para propósitos de la moción y no constituyen una aceptación definitiva que implique la renuncia a cualquier controversia material que deba determinarse por la prueba del juicio. *Sepúlveda v. Casanova*, 72 DPR 62, 68 (1951).

Ahora bien, el estándar aplicable al adjudicar una moción para que se dicte sentencia por las alegaciones es idéntico al que se utiliza ante una moción basada en que la demanda deja de exponer una reclamación que justifique la concesión de un remedio, según la Regla 10.2 de Procedimiento Civil, *supra. Montañez v. Hosp. Metropolitano, supra*, pág. 104. En ese sentido, tanto la moción para que se dicte sentencia por las alegaciones, como la moción de desestimación, son mecanismos que se dirigen a los méritos de la controversia y no a los aspectos procesales. *Íd.*

## C. Regla 39.1 de Procedimiento Civil

En lo pertinente, el desistimiento constituye el mecanismo procesal por el cual el actor, mediante la expresa declaración de su voluntad, anuncia su intención de abandonar el curso de la acción que promovió, teniendo ello el efecto de extinguir la pendencia del litigio de que trate. J.A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, 2da. Ed., Publicaciones JTS, 2011, T. III, pág. 1138. En lo concerniente, la Regla 39.1 de Procedimiento Civil, 32

LPRA Ap. V., R. 39.1, traza los criterios y las consecuencias del empleo de la aludida figura en nuestro esquema de derecho. A tal fin, expresamente dispone como sigue:

> a. *Por la parte demandante; por estipulación* - Sujeto a las disposiciones de la Regla 20.5 de este apéndice, una parte demandante podrá desistir de un pleito sin una orden del tribunal:
>
> 1. Mediante la presentación de un aviso de desistimiento en cualquier fecha antes de la notificación por la parte adversa de la contestación o de una moción de sentencia sumaria, cualesquiera de éstas que se notifique primero, o
>
> 2. Mediante la presentación de una estipulación de desistimiento firmada por todas las partes que hayan comparecido en el pleito.
> A menos que el aviso de desistimiento o la estipulación exponga lo contrario, el desistimiento será sin perjuicio, excepto que el aviso el desistimiento tendrá el efecto de una adjudicación sobre los méritos cuando lo presente una parte demandante que haya desistido anteriormente en el Tribunal General de Justicia, o en algún tribunal federal o de cualquier estado de Estados Unidos de América, de otro pleito basado en o que incluya la misma reclamación.
>
> b. *Por orden del tribunal* - A excepción de lo dispuesto en el inciso (a) de esta regla, no se permitirá a la parte demandante desistir de ningún pleito, excepto mediante una orden del tribunal y bajo los términos y las condiciones que éste estime procedentes. A menos que la orden especifique lo contrario, un desistimiento bajo este párrafo será sin perjuicio.

De conformidad con la norma antes esbozada, nuestro ordenamiento distingue entre el desistimiento producto de la sola voluntad del demandante o de las partes, y aquél decretado únicamente mediante la anuencia del tribunal. Específicamente, el inciso (a) del referido precepto provee para que el promovente de una acción, por sí y previo a que le sea notificada algún tipo de alegación responsiva por parte del promovido, opte, sin más, por no proseguir su causa. Igualmente, también contempla el caso y las condiciones en las que, luego de acontecida dicha instancia, todas las partes comparecientes suscriban una estipulación prestando su consentimiento a fin de suspender la pendencia del pleito.

Ahora bien, el inciso (b) de la disposición antes transcrita, regula los efectos de una petición sobre desistimiento luego de que un demandado haya cursado su alegación responsiva, cuando se haya presentado una solicitud sobre sentencia sumaria, o en defecto

de una estipulación sobre desistimiento entre los litigantes. En cualquiera de estos escenarios, el demandante está llamado a presentar una moción al tribunal, debidamente notificada a todos los comparecientes, informando su intención de renunciar a la continuación del pleito. Por su parte el Juzgador habrá de adjudicar sus méritos conforme dicte su criterio discrecional, todo a la luz de las particularidades del caso. *Ramos Báez v. Bossolo López,* 143 DPR 567, 571 (1997).

### III.

En esencia, el apelante centra sus señalamientos de error sobre la utilización indebida del mecanismo de desestimación al amparo de la Regla 10.2*, supra,* para resolver asuntos de valorización de prueba documental y testifical y así desestimar los méritos de su causa de acción, con perjuicio. En su recurso presenta argumentos sobre la citada regla, así como la legitimación activa bajo la doctrina de acción derivativa al amparo de la Ley de Corporaciones, 14 LPRA sec. 4003, así como la Regla 10. 3, *supra,* sobre la suficiencia de sus alegaciones y la errada imputación de temeridad en su contra. Resaltó que, cuenta con correos electrónicos, minutas, *balance sheets,* estados de cuentas, su propio testimonio, entre otra prueba anunciada en el Informe CAJ, para sustentar sus alegaciones en el juicio previamente autorizado.

En reacción, los apelados comparecen en conjunto y sostienen que el TPI actuó correctamente en esta etapa del pleito, al evaluar al amparo de la Regla 10.2*, supra,* la prueba anunciada, después de concluir el descubrimiento de la prueba y así determinar que dicha prueba resultaba insuficiente. Ante los argumentos sobre la aplicación errónea del derecho procesal, aducen que, nuestro ordenamiento no exige semejante ejercicio de formalismo. Sobre la acción derivativa discutida por el apelante, se oponen ante su presentación a destiempo y porque el apelante no cumple los

requerimientos estatutarios de la Ley de Corporaciones, *supra.* En cuanto a los demás asuntos plantean que, el apelante desistió de la mayoría de sus reclamaciones y el TPI no erró al evaluar la prueba documental y testifical. Sobre tales bases solicitan que se confirme el dictamen apelado.

Examinadas las posturas de las partes, y por estar estrechamente relacionados, procedemos a discutir los señalamientos de error en conjunto.

Es norma reiterada, al examinar la moción de desestimación, como la moción para que se dicte sentencia por las alegaciones, según la Regla 10.2 de Procedimiento Civil, *supra*, el tribunal deberá examinar las alegaciones de la demanda liberalmente y de la manera más favorable al demandante. Únicamente se desestimará la acción si el promovente no tiene derecho a remedio alguno bajo cualesquiera hechos que pueda probar en juicio. El tribunal debe conceder el beneficio de cuanta inferencia sea posible hacer de los hechos bien alegados en la demanda. *Montañez v. Hosp. Metropolitano, supra*, pág. 105.

De particular importancia debemos resaltar que, recientemente en *St. Mary Investments, LLC v. Wilfredo Denton Morales y otros,* supra, el Alto Foro dispuso que al momento de adjudicar una moción de desestimación al amparo de la Regla 10.2 de Procedimiento Civil, *supra*, bajo el fundamento que la reclamación no expone una reclamación que justifique un remedio, **los tribunales inferiores no están revestidos de autoridad para ponderar cuestiones de prueba** ya que el análisis no se extiende a un estándar de adjudicación de naturaleza probatoria, sino lo que se exige es que los tribunales interpreten conjuntamente las alegaciones de la parte demandante a la luz de la situación más favorable.

Aclaramos, surge del tracto procesal del caso de epígrafe que, el foro primario denegó varias mociones dispositivas, y consignó que, tomando como ciertas y buenas todas las alegaciones fácticas de la demanda enmendada, se cumplía con el estándar de plausibilidad. Asimismo, en otro momento del litigio y al entender sobre dos petitorios instados al amparo de la Regla 36, *supra,* el TPI concluyó que existían controversias de hechos materiales que impedía la adjudicación de la causa por la vía sumaria. Cabe destacar que, el foro primario también identificó controversias que incluyen elementos subjetivos de intención, propósitos mentales o negligencia, en donde el factor credibilidad es esencial para la adjudicación de estas. Por todo lo anterior, el TPI denegó mociones de carácter dispositivo presentadas a lo largo del litigio. Lo antes, denota la ley del caso hasta la etapa de la conferencia con antelación al juicio. De ahí, observamos que, mediante ciertas minutas firmadas y notificadas en autos, el foro primario dispuso de ciertos asuntos que inciden sobre el alcance de los presuntos desistimientos de alegaciones y el cuadro procesal que, evidentemente generó cierta confusión sobre el curso a seguir. Si bien es cierto que, una minuta es un resumen de los acontecimientos en una audiencia judicial, una vez el foro primario la firma y ordena su notificación en autos se considera una resolución interlocutoria sujeta a revisión judicial. De otra parte, observamos que de un examen del expediente resulta evidente que, en ningún momento el TPI ordenó al apelante presentar mediante moción su desistimiento conforme exige la Regla 39.1, *supra.*

Ante este cuadro procesal nos corresponde examinar la *Minuta* de la vista celebrada el 5 de mayo de 2025. En esta surge que, el TPI autorizó el desistimiento del señor Crespo sobre la alegación de plusvalía. De otra parte, surge del Informe de Conferencia con Antelación al Juicio que, el apelante consignó su

desistimiento sobre las alegaciones sobre angustias mentales <u>sin perjuicio</u>. Como se sabe, las angustias mentales figuran como una forma o categoría de daños y perjuicios compensables y se distinguen de otros tipos de daños como los daños económicos. De nuestro examen cuidadoso del expediente no se desprende que, el apelante haya realizado un desistimiento de todas sus alegaciones y mucho menos de la totalidad de su "causa de acción" conforme exige la Regla 39.1, *supra.* La minuta de la conferencia con antelación al juicio incluye una referencia generalizada a las alegaciones desistidas sin identificarse a cuáles se refería. Añádase a ello que, tampoco tenemos el beneficio de algún dictamen parcial para garantizar la claridad de las reclamaciones pendientes ante la consideración del foro primario, según establece la Regla 42.3 de Procedimiento Civil, *supra.*

En nuestro ordenamiento civil se reconocen las alegaciones mediante la Regla 6.1, *supra,* como una relación sencilla de hechos para demostrar el remedio a que se crea tener derecho. Por tanto, al entender sobre la causa ante nos, tomamos conocimiento que, según la *Minuta* notificada en autos, el TPI autorizó lo consignado por las partes en el Informe de CAJ. En su consecuencia, colegimos que el apelante únicamente desistió de las alegaciones contenidas en los incisos 92 y 93 de la demanda enmendada las cuales versan sobre angustias mentales. Lo antes, sin perjuicio. De igual forma reconocemos que mediante una *Minuta-Orden* notificada en autos y correspondiente a la vista celebrada el 5 de mayo de 2025, el TPI acogió el desistimiento de la reclamación sobre plusvalía.

No obstante, lo anterior, mediante el dictamen apelado, el TPI desestimó la totalidad de las reclamaciones y lo decretó con perjuicio. El TPI indicó en la *Sentencia* apelada que, señor Crespo "desistió de varias de las alegaciones originalmente formuladas, lo que conllevó el desistimiento de múltiples reclamaciones y/o

solicitudes de remedio". De una lectura de lo antes, resulta evidente que, el TPI incidió en concluir que el desistimiento acogido en el Informe de Conferencia con Antelación al Juicio y discutido en la vista celebrada el 5 de mayo de 2025 y el 7 de octubre de 2025, correspondía a la totalidad de las alegaciones y reclamaciones contenidas en la demanda enmendada, con perjuicio.

En lo pertinente, conforme a la Regla 39.1 de Procedimiento Civil, *supra,* el desistimiento constituye el mecanismo procesal por el cual el actor, mediante la expresa declaración de su voluntad, anuncia su intención de abandonar el curso de la acción que promovió, teniendo ello el efecto de extinguir la pendencia del litigio de que trate. Cuevas Segarra*, op. cit.*, pág. 1138. De modo que, en ambos escenarios contemplados en la citada regla, el demandante está llamado a presentar una moción al tribunal, debidamente notificada a todos los comparecientes, informando su intención de renunciar a la continuación del pleito. *Ramos Báez v. Bossolo López, supra.*

No obra en autos una moción precisa a esos efectos y mucho menos identificamos algún pronunciamiento interlocutorio parcial que lo notifique de forma fehaciente. Solo identificamos lo expuesto en el Informe de Conferencia con Antelación al Juicio en el acápite K sobre el desistimiento sin perjuicio de las "alegaciones" sobre angustias mentales y luego una solicitud de enmienda a la demanda en el acápite M del mismo informe. Observamos además que, a pesar de impartir su aprobación al referido Informe CAJ según presentado por todas las partes, el TPI no atendió propiamente las solicitudes de enmiendas promovidas por el apelante y ordenó a los apelados a presentar mociones dispositivas que presuntamente entendieron que deberían ser conforme la Regla 10.2 y 10.3, *supra,* y no basadas en la Regla 36, *supra,* propiamente.

Sin haberse particularizado las alegaciones desistidas por la parte apelante, en su pronunciamiento, el foro primario delimitó sustancialmente la controversia a la determinación de si el señor Acosta, había transferido a West Development, la titularidad de los derechos de uso relacionados con los Indios. Así concluyó, erradamente que, el apelante desistió de toda su causa de acción y remedios solicitados contra la parte apelada. En ese sentido, nos resulta forzoso concluir que, el señor Crespo desistió de las alegaciones sobre angustias mentales sin perjuicio y plusvalía, más no así de la causa de acción sobre restitución de West, indemnización adicional que no sea superior al monto del daño causado de determinar que el acto y/u omisión constituye delito, se realiza de forma dolosa o con grave menosprecio a la vida, la seguridad y la propiedad ajena. Véase la súplica en la demanda enmendada en los incisos 2, 5 y 6, respectivamente.

Por otro lado, apreciamos que, en una etapa anterior, mediante la *Resolución* emitida el 7 de agosto de 2024, el TPI específicamente estableció que basado, en parte, de los mismos documentos anunciados en el Informe CAJ, no procedía la adjudicación de la causa por la vía sumaria. Sin embargo, con posterioridad, evaluó las mociones dispositivas al amparo de la Regla 10.2, *supra*, y -distinto a lo que requiere las normas jurisprudenciales aplicables- entró a valorizar la prueba anunciada.

Como se sabe el análisis aplicable a la Regla 10.2, *supra*, se circunscribe a examinar las alegaciones de la demanda liberalmente y de la manera más favorable al demandante. Lo antes, necesariamente impide que el foro primario, como ocurrió en el caso ante nos, proceda a evaluar y valorizar la prueba identificada en un Informe de Conferencia con Antelación al Juicio para sostener sus conclusiones sobre la falta de credibilidad de prueba documental y testifical. Añádase a ello que, ninguna de las partes incluyó anejo

alguno en aras de acreditar una moción que cumpliera con las formalidades requeridas para adjudicar la causa por la vía sumaria conforme la Regla 36 de Procedimiento Civil, *supra,* o, en la alternativa que, el TPI hubiese notificado a la parte opositora que se atenderían las súplicas por la vía sumaria, para así garantizarle una oportunidad de confrontar prueba o la petición de insuficiencia de la prueba basado en la normativa dispuesta en la Regla 36, *supra.* Aun así, en su dictamen, el TPI ignoró lo antes y consideró correcto efectuar la valorización de la prueba anunciada e identificada tanto documental como testifical, sin que la parte opositora, aquí apelante, tuviera oportunidad conforme permiten nuestras reglas evidenciarias de presentarla dentro de un debido proceso de ley. Incidió en su proceder.

Colegimos que, el TPI de forma contradictoria dentro de un análisis al amparo de la Regla 10.2, *supra*, dilucidó la prueba anunciada en el Informe CAJ. Aun, cuando podríamos considerar la etapa procesal con antelación al juicio como etapa para entretener mociones dispositivas, no podemos ignorar que en este caso los petitorios no cumplen las formalidades de la Regla 36, *supra*, porque fueron presentados conforme a la Regla 10.2, *supra.* Por ello, y como cuestión de derecho, no podemos ignorar la doctrina establecida y reiterada por el Tribunal Supremo en la jurisprudencia antes reseñada que, no permite la evaluación y valorización de la prueba documental y testifical ante una moción presentada al amparo de la Regla 10.2, *supra.* En su consecuencia colegimos que, la prueba anunciada fue apreciada y valorizada por el TPI a destiempo. De hecho, las partes precisamente alertaron sobre este particular al estipular la autenticidad de los documentos anejados al Informe CAJ, pero claramente se reservaron el derecho de aportar prueba adicional para aclarar, refutar y corregir información, así como para contradecir y confrontar la interpretación, validez o significado que

la otra parte pretendiera probar con los referidos documentos. Basado en lo antes, concluimos que, los errores señalados se cometieron.

Por último, en su recurso, el apelante discute una presunta acción derivativa, la cual no surge que haya sido atendida por el foro primario en el dictamen apelado, por lo que, nos abstenemos de revisar dicho planteamiento, junto a las solicitudes de enmiendas expuestas en el Informe de CAJ, así como los argumentos sobre alegada falta de partes indispensables de índole jurisdiccional, las cuales quedaron pendientes ante el TPI. Véase lo resuelto en *Trabal Morales v. Ruiz Rodríguez*, 125 DPR 340, 351 (1990).

Con estos antecedentes, colegimos que, el Tribunal incidió al desestimar con perjuicio la totalidad de la demanda al amparo de la Regla 10.2 (5) *supra*. Ciertamente lo antes, no prejuzga ni limita las determinaciones y el buen manejo del caso que tenga bien de ejercer el foro primario dentro de su sana discreción en la continuación de los procesos, conforme lo aquí resuelto.

**IV.**

Por los fundamentos expuestos, revocamos el dictamen apelado y devolvemos el caso ante el foro primario para la continuación de los procedimientos de rigor.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones